HOLLIS *v.* JONES *et al.,* trustees.

No. 12373. September 23, 1938. Rehearing denied October 15, 1938.

*Talmadge, Fraser & Camp,* for plaintiff.

*J. C. Savage, C. S. Winn, Bond Almand,* and *J. C. Murphy,* for defendants.

Bell, Justice. This was a suit by the widow of a police officer of the City of Atlanta, for the writ of mandamus to require payment of a balance of a monthly pension claimed by the plaintiff under the act of 1925 (Ga. L. 1925, pp. 228-234). This is the second appearance of the case in this court. In *Hollis* v. *Jones,* 184 *Ga.* 273 (191 S. E. 127), it was held that the act of 1933 (Ga. L. 1933, p. 213), purporting to repeal the act of 1925 and to provide for a smaller pension, was invalid as applied to the claim of the plaintiff. It was further held that "the petition was good as against a general demurrer." It appears from the petition that the plaintiff's husband died in June, 1930. From that date until February, 1933, the board of trustees of the pension fund paid to the plaintiff a pension of $99 per month, in pursuance of the act of 1925. In February, 1933, the defendants reduced the payments to $40 per month, in accordance with the act of 1933. In August, 1936, the present action was instituted, seeking to recover a balance of $59 per month from February 1, 1933, to August 1, 1936, inclusive, amounting in all to the sum of $2478. In paragraph 12 the petition alleged "that there is a sufficient sum in said trustees' hands to pay to your petitioner the said sum which is due your petitioner, and your petitioner shows that said trustees likewise have on hand a sufficient amount to pay all pensioners in full for the period stated." The answer, of course, was not considered in passing upon the demurrer to the petition. The defendants in their answer responded to the foregoing allegation as follows: "Answering paragraph 12, these defendants deny that there is a sufficient sum remaining from the fund created by the act of 1925 to pay the plaintiff herein the amount sued for, and to continue monthly payments in any sum. At the time of the repeal of the act of 1925, the trustees elected under the act of 1925 had in their

possession the sum of $42,785.51, which sum was paid over to the trustees elected under the provisions of the act of 1933. These defendants say that said sum has been wholly exhausted, and that there remains in the hands of the trustees only funds which have been raised under the provisions of the act of 1933." In the trial now under review, at the close of the evidence the judge directed a verdict in favor of the defendants, and the plaintiff excepted. The bill of exceptions contained assignments of error on the direction of the verdict, and on rulings admitting and excluding evidence. The evidence admitted over objection was an application signed by the plaintiff for payments according to the act of 1933, and was offered by the defendants as evidence of an election or waiver; while the evidence excluded was testimony of the plaintiff, explaining the circumstances under which this application was signed by her, and was offered for the purpose of rebutting its force or effect, if any, as evidence against her.

B. Graham West, a witness for the plaintiff, testified as follows: "I am a member, and the secretary, of the Board of Trustees of the Pension Fund of the Police Department of the City of Atlanta. . . I kept all books and accounts. I was a member and secretary of the old board before the act of February, 1933. . . There was in the treasury of the board at the time of the passage of the act of February, 1933, the sum of $42,821.96. This money was turned over to the new board after the passage of the act of February, 1933, and put into the money with the other fund and disbursed along with the other. There was no separate account kept of this balance of $42,821.96 after the passage of the act of February, 1933, but it was intermingled with the funds which were collected under the terms of the act of February, 1933. It was poured into the same jug with other collections made since that time. The cash balance in the hands of the board of July 30th, 1936, was $109,000. It was never lower than that sum between that date and the date of the filing of the mandamus. That money was in cash or its equivalent in Federal, State or municipal bonds which were readily convertible into cash. If the demand upon the board upon behalf of the plaintiff was made within thirty days of the time of the filing of the mandamus, I can say that the cash balance or its equivalent, at the time of the demand, was in excess of $100,000. Since I have been secretary,

both before the passage of the act of February, 1933, and afterwards, there has been no demand upon the board that it could not meet, and the cash balance has steadily increased from the balance of $40,000 in February, 1933, to the present balance in excess of $100,000. . . The act first creating the pension fund, I think, was established in 1925. The $42,000 which was turned over by the old board to the new board in 1933 has been paid out some time ago. The amount paid out annually by the old board was approximately between $65,000 and $70,000. The monthly difference, as I see it, between the payments of the old board and the new board is about $3500 a month which would have exhausted the old fund in about a year's time. The annual income of the old board of trustees prior to the act of February, 1933, from all sources, was approximately $22,000 per year. The old board paid out approximately $70,000 per year. The old board was paying out $48,000 a year more that they were receiving. By collecting $22,000 per year, and paying out $70,000 per year, the board of trustees would have been broke in about twelve months. There was no other provision for revenue under the act of 1925, as both the act of 1925 and the act of 1933 provided what the sources of revenue were, where it was to come from, and, if at any time there was not sufficient money from those sources, that those on pensions would be prorated out of the money that was in the fund. The condition of the pension fund under the present act is not actuarily solid and sound. We are taking in more than we are paying out, and it is in a sounder condition than it was. It has gained from $42,000 in 1933 to $100,000 now, and our collections are more than our annual disbursements. Even if the cash balance of the board since 1933 has been more than $42,000, I say that the original $42,000 has been spent, because it is simply a case of mathematics. The cash balance of the board has been more than $40,000, and the disbursements have been considerably less. That particular $42,000 has been spent long ago. The board has always had much more than that in its hands since 1933, because since 1933 they increased the receipts and decreased the disbursements. No pension fund that I have had anything to do with is actuarily sound. The City of Atlanta has a general pension fund and a fireman's pension fund, but none are actuarily sound. By referring to paragraph 11 of the answer, I can say that the annual

income from all sources of the 1933 act is about $65,000 as against $22,000 ·under the old act. Our records show the amount paid to each individual each month, and the records here show exactly what was paid out each month. When the act of 1933 went into effect, we had on hand $42,800. The receipts ·from all sources, including from 1933 through 1937 have been $339,914, plus the cash we had on hand at the time, $42,000, making about $382,000 in round numbers. The amount paid out, 1933 through 1937 .including—if we had continued on on ˙the old basis of paying pensions, we would not have had in that fund today more than $10,-000. The amount paid out to all pensioners on the pension roll between February, 1933, and August, 1936, was $150,763.94. Of that amount, my estimate is that not more than $10,000 was paid at that time to new pensioners. The balance on April 4th, 1933, was $40,899.76. The balance on May 1st, 1933, was $40,289.65. On May 31st, 1933, the balance was $38,375.24. The balance on June 30th, 1933, was $41,403.40. The balance on June 30th, 1934, was· $57,757.27. The balance continued to increase from June, 1933, to the present time. The receipts were always more, and the disbursements were less. We have collected and paid out money between balances. Under the 1925 law, the policemen paid in one per cent. of their salary, and fifteen per cent. of the police-court fines went into the fund. Under the act of 1933, each policeman pays $3 per month, and the city contributes twenty-five per cent. of the police fines and costs and forfeitures and things like that —old-horse sales and miscellaneous receipts. If the 1933 act had never been passed, and if the board had applied the pro-rata clause to the 1925 act so as to keep payment of pensions within the revenue, the pensions would have been reduced, roughly, two thirds, and in a short time there would not have been anything. If the pro-rata provision had been applied under the old act, Mrs. Hollis would have continued to get only $33 per month instead of $40 that she is getting under the new law, and may be some months she would not have gotten anything, but in no month could she have gotten more than two thirds of what she is now getting. The most she would have gotten under any circumstances was $33, and this would have been decreased. We have approximately 107 or 108 on the pension rolls now. That includes widows and children and dependents of all kinds. There are about four hundred mem-

bers of the police force now, and all of the members belong to the pension fund. There are about four hundred policemen contributing now, and something like one hundred on pensions now, including wives and children." No other evidence was introduced.

The pension act of 1925 provided for payment of pensions and other benefits only from a fund created in the manner therein specified, namely, by a "tax" of one per cent. on officers' salaries, and by setting apart fifteen per cent. of all fines and forfeitures in the recorder's court, and a like percentage "of the total of old-horse sales or property brought in by policemen." Ga. L. 1925, §§ 9, 10, pp. 237, 238. The act of 1933, evidently designed in part to create a larger revenue, provides that a tax of $3 per month shall be levied on officers' salaries, and "that the sum of twenty-five per cent. (25%) of all money collected in fines and costs, and from bond forfeitures or forfeitures of collaterals in the recorder's courts of such cities, shall be paid into the pension fund created under the provisions of this act, and, in addition thereto all cash received from what is known as 'old-horse sales' or property brought in by policemen and sold where no claim is filed thereto, and all money left with said department and unclaimed for a period of ninety (90) days, shall be placed in said pension fund." See sections 9 and 10. While it appears from the evidence that there are in the hands of the trustees funds sufficient in amount to pay the plaintiff's claim, the same evidence shows further, and without dispute, that these funds are in existence because of the increase in revenue provided by the act of 1933, and that the funds received under the act of 1925 were exhausted, because of inadequate revenue, long before the present suit was instituted. The plaintiff has repudiated the act of 1933, and is relying solely upon the act of 1925. She is not entitled to the writ of mandamus to compel the defendants to pay her a pension out of funds that are not in existence, where such funds as were received by the board were properly applied in accordance with the statute. Under the action as instituted, she is entitled to only such sum as might be lawfully paid to her under the act of 1925. The trustees were required to administer only such funds as came into their hands under this statute, and will not be compelled by the writ of mandamus to perform the impossible. Code, § 64-106; *McGill* v. *Osborne,* 131 *Ga.* 541, 544 (62 S. E. 881). According to the undisputed testi-

mony of the secretary of the board, if the act of 1933 had never been passed, "the pensions would have been reduced, roughly, two thirds, and in a short time there would not have been anything. If the pro-rata provision had been applied under the old act, Mrs. Hollis would have continued to get only $33 per month instead of $40 that she is getting under the new law and may be some months she would not have gotten anything, but in no month could she have gotten more than two thirds of what she is getting now. The most she would have gotten under any circumstances was $33, and this would have been decreased." The plaintiff was paid, however, $40 per month for the period covered by the suit. Under the evidence she would not be entitled to more, under the act of 1925. While the witness referred to a "pro-rata provision" in the act of 1925, and we find no such provision except in the caption, this does not alter the present case, since the trustees would be required to administer only such fund as was created in accordance with the act. The court did not err in directing the verdict in favor of the defendants. The result could not have been different if the court had ruled in accordance with the plaintiff's contentions on the admission and rejection of evidence. Nothing said in this opinion is intended as a ruling or intimation that the plaintiff may not continue to receive payments at the rate of $40 per month.

*Judgment affirmed. All the Justices concur, except Russell, C. J., not participating.*