19469. BROWN *et al. v.* NEWPORT.

Argued September 11, 1956—Decided October 10, 1956—Rehearing denied November 15, 1956.

*J. C. Savage, J. M. B. Bloodworth, Ferrin Y. Matthews, Robt. S. Wiggins, Newell Edenfield, Henry L. Bowden, Hamilton Lokey, Charles M. Lokey,* for plaintiffs in error.

*Harold Sheats, Guy Parker, Thomas B. Branch, Jr.,* contra.

Almand, Justice. On March 5, 1953, F. A. Newport filed his petition seeking a writ of mandamus absolute against H. F. Brown and others, as members of the Board of Trustees of the Policemen's Pension Fund of the City of Atlanta, to require said trustees to issue to him a voucher in the amount of $3,475, representing the balance alleged to be due him as a retired policeman from January 20, 1935, to March 1, 1953, and to issue to him future monthly vouchers in the sum of $87.50 as such retired officer. The defendants filed their response, to which the plaintiff filed demurrers, and exceptions pendente lite were filed by the defendants to the order sustaining some of said demurrers and striking several paragraphs of the defendants' response. Thereafter the case came on for trial before the judge without the inter-

vention of a jury, at the conclusion of which he entered an order granting the prayer for a mandamus absolute. The defendants filed a motion for a new trial, and said motion being denied, they brought the case to this court.

The petition and the statutes referred to therein made the following case: Newport became a member of the police department of the City of Atlanta in 1909, and served regularly and without interruption until January 20, 1935, at which time he retired. Under the act of 1925 (Ga. L. 1925, p. 234), which was a law having application only to cities having a population of more than 150,000, it was provided that such class of cities should furnish aid, relief, and pensions to regular members of the police department. This act provided for the raising and establishing of funds for aid, relief, and pensions for the members of the police department, whereby a policeman could retire as a matter of right after 25 years of active service and be paid from the pension fund one-half the salary he was receiving at the time of his retirement, for the rest of his life. The act established a board of trustees, whose duty was to manage the pension fund as a separate fund. It was provided that a tax of 1% should be levied on the salaries of all members of the police department, and that 15% of all fines and forfeitures coming into the recorder's court of such cities, and 15% of the total of old horse sales of property brought in by policemen, should be set apart by such cities to constitute a part of the fund to pay such relief and pensions. Newport became a member of the pension fund in 1925, and the 1% assessment of his salary was paid into the fund until passage of the act approved February 15, 1933 (Ga. L. 1933, p. 213). This act, as well as the act approved March 8, 1933 (Ga. L. 1933, p. 223), repealed the pension act of 1925. *Leonard v. State*, 204 *Ga.* 465 (50 S. E. 2d 212); *Humthlett v. Reeves*, 211 *Ga.* 210 (2) (85 S. E. 2d 25). The act of February 15, 1933, provided that from and after passage of the same there should be raised and established funds for the relief and pensioning of the members of the police department in active service at the time of the passage of the act in cities having a population of more than 150,000. It was provided that such members could retire as a matter of right after 25 years of active service, and receive a sum not exceeding $60 per month for the remainder of their natural

lives. A board of trustees was appointed to manage the fund, and such fund should be kept in a separate fund by the city treasurer. The pension fund was made up by: (a) levying a tax of $3 per month on all members of the police department who had stood civil-service examinations, and whose names were on the payroll at the time of the passage of the act; (b) 25% of all cash collected in fines and costs and from bond forfeitures or forfeitures of collateral in the recorder's court; (c) 25% of all cash received from what is known as old horse sales; and (d) $3 for each person arrested by a member of the police department who was bound over by the recorder, which was to be paid into the city treasury by the county receiving such prisoner. The city treasurer was required under this act to keep separate and apart from all other monies in his possession all the funds belonging to the police-pension fund, and "the funds so raised are for the sole use mentioned in this act, and are subject only to the orders of the Board of Trustees for carrying out the intention of this pension law." The act further provided "that all pension-rolls of the police department of such cities are hereby abolished, and all persons who are now or heretofore entitled to a pension under any prior law shall make application for pension under the provision of this act, and, if entitled thereto under the provisions of this act, shall be by said board placed on the pension-roll under the provisions thereof, but, if not entitled to pension under the provisions of this act, shall be denied the right to participate in any of the funds belonging to the pension fund." It was further provided that, in the event there should be at any time less funds on hand than were needed to carry out the terms of the act, then the actual funds on hand "shall be prorated among those then on the pension-roll and the beneficiaries of such as are entitled to receive pensions under the provisions of this act." The act approved March 8, 1933, provided for the repeal of the act of 1925, and that the fund "now in the hands of the trustees created and appointed under said act shall be transmitted to the trustees created and appointed under this act, to the end that the funds formerly raised under said repealed act for the benefit of the Police Department shall be continued to the benefit of the same department under this act. The trustees appointed hereunder shall receive said funds and disburse them as provided under the

provisions of the present act." Newport alleged that, at the time of his retirement on January 20, 1935, he made application to the pension board for his retirement pay and was placed on the roll for retirement pay, and has received retirement pay in the amount of $60 per month under the act of 1933 through February, 1939, and since April 1, 1939, he has been paid the sum of $75 per month. (The monthly payment of $60 was increased to $75 by the act of 1939, amending the act approved February 15, 1933. Ga. L. 1939, p. 356.) He alleged that in August, 1952, he demanded that an adjustment be made in the amount of retirement pay being paid to him, demanding that the monthly amount be increased to one-half his salary at the time of his retirement, and that payment thereof be increased to the sum of $87.50 per month, which demand was refused. He alleged that there were now sufficient funds in the hands of the defendants to pay the past due amount of $3,475 and to continue the monthly payments thereafter in the amount of $87.50; and that, if there were not sufficient funds, it was the duty of the defendants to require the Mayor and Council of the City of Atlanta to see that sufficient funds were raised and appropriated to the fund. He alleged that any claim on the part of the defendants that he was limited to the amounts fixed by the act of 1933 was unconstitutional and void for several reasons, in that the attempt to reduce the amount of his pension from one-half of his salary to $60 per month violated his constitutional rights.

The defendants in their response alleged that, at the time of the repeal of the act of 1925, the trustees of the pension fund under that act turned over to the trustees of the pension fund under the act of 1933, $42,785.51, and this amount has long since been wholly exhausted, there remaining in the hands of the present trustees under the act of 1933 only funds which have been raised under the provisions of that act, and that they could not lawfully comply with the plaintiff's demand because the act of 1925 had been repealed, and all funds raised under the act of 1925 have been paid out to pensioners; that, under the act of 1933, each member of the pension fund had paid in $3 per month, and they have received one-fourth of all fines in the recorder's court, and their revenues for the payment of pensions have increased from the annual sum of approximately $20,000 to a total

amount of $65,000 since 1933, and although 42 additional pensioners have been added to the pension rolls since repeal of the 1925 act, the aggregate payments to pensioners under the act of 1933 were $54,480 per year, as compared to $70,907.88 per year under the act of 1925 at the time that act was repealed.

All the paragraphs in the response setting up the reasons why the trustees denied the plaintiffs' demand, as outlined above, were stricken on demurrer. The first question for decision, therefore, is whether or not the court erred in striking this defense in the response.

1. Under the rulings by this court in *Hollis* v. *Jones,* 187 *Ga.* 14 (199 S. E. 203), and *Jett* v. *Jones,* 190 *Ga.* 361 (9 S. E. 2d 239), we are of the opinion that the court erred in this regard. In the *Hollis* case, the suit was by the widow of a police officer who sought by writ of mandamus to require the trustees of the pension board to pay her the monthly pension claimed by her under the act of 1925. The case first appeared in 184 *Ga.* 273 (191 S. E. 127), where it was held that the petition was good as against general demurrer. The petition in that case alleged that there was a sufficient amount in the hands of the trustees to pay the petitioner's claim. The defendants in their answer denied that there was a sufficient sum remaining from the funds collected under the act of 1925 to pay the petitioner the amount sued for and to continue paying monthly payments in any sum. They alleged that the sum the trustees under the act of 1933 received from the trustees under the act of 1925 had been wholly exhausted; and that there remained in the hands of the trustees only funds which had been raised by the act of 1933. On the trial before the judge and a jury, the judge directed a verdict for the defendants; and this court, in affirming the judgment, said (187 *Ga.* 14) "it appearing without dispute from the evidence that for the period covered by the suit the plaintiff received under a subsequent statute as much from the pension fund as the defendants could lawfully have paid to her under the act of 1925, the court did not err in directing a verdict in favor of the defendants." In the opinion, it was said:

"While it appears from the evidence that there are in the hands of the trustees funds sufficient in amount to pay the plaintiff's claim, the same evidence shows further, and without dispute,

that these funds are in existence because of the increase in revenue provided by the act of 1933, and that the funds received under the act of 1925 were exhausted, because of inadequate revenue, long before the present suit was instituted. The plaintiff has repudiated the act of 1933, and is relying solely upon the act of 1925. She is not entitled to the writ of mandamus to compel the defendants to pay her a pension out of funds that are not in existence, where such funds as were received by the board were properly applied in accordance with the statute. Under the action as instituted, she is entitled to only such sum as might be lawfully paid to her under the act of 1925. The trustees were required to administer only such funds as came into their hands under this statute, and will not be compelled by the writ of mandamus to perform the impossible." P. 19.

The *Jett* case involved an action by the widow of a police officer of the City of Atlanta seeking the same relief, under facts similar to those in the *Hollis* case, and the ruling made in the *Hollis* case was applied by the unanimous decision of this court. The defendants in the instant case were denied from setting up, as a defense to the non-payment of the demand, the same facts and circumstances which were held in the *Hollis* case to constitute a good defense to the payment of the pension provided for under the act of 1925.

Counsel for the plaintiff contend that, since the right of Newport under the act of 1925 could not be impaired by the act of 1933 as to the amount of pension he was to be paid (*Hollis* v. *Jones*, 184 *Ga.* 273, supra), the funds transferred from the pension fund derived under the act of 1925, together with subsequent contributions to the fund under the act of 1933 to the date this action was brought, were sufficient to pay him the amount of the pension provided by the act of 1925, and consequently the pension fund is now sufficient to pay his demand. This same contention was made and rejected, as appears in the quotation from the opinion in the *Hollis* case.

It is further insisted that, under the act of 1941 (Ga. L. 1941, p. 476), which amended the pension act of 1933, the City of Atlanta guaranteed the solvency of the fund in which Newport was interested and to which he had the right to look for the payment of his pension. The act of 1941 amended the act of 1933

by striking the section of that act as to the payment of a percentage of the fines and forfeitures of the recorder's court and of the proceeds from old horse sales, and the $3 arresting fine, into the pension fund, and provided that the city should appropriate annually from any funds available $90,000 to the pension fund. "created" under the act of 1933. It further repealed the section of the act of 1933 providing for the proration of the pension funds to pensioners when the fund was insufficient to pay the pensioners in full, and provided that, in case the pension fund was not sufficient to carry out the terms of the act of 1933, the City of Atlanta "shall immediately appropriate from any funds available a sufficient amount to make up the deficiency and to provide sufficient funds for the payment of pensions due in full under the provisions of this act." It is thus seen that the obligation of the city, imposed upon it after Newport retired, was to supplement the pension fund to pay the pension provided under the act of 1933. It is undisputed that the defendants have paid to Newport all the sums he was due under the act of 1933, as amended by the act of 1939. As was held in the *Hollis* case, he is not entitled to look to any increase in the fund received under the act of 1933. Newport, having repudiated the act of 1933, and relying upon the act of 1925, would not be entitled to compel the defendants to pay his pension out of funds which have no existence.

The court erred in striking from the answer of the defendants paragraphs 6, 7, 8, 9, and 12. There was no error in sustaining the demurrers to paragraphs 10, 11, 13, 15, 16, and 17 of the answer. These paragraphs in substance asserted that the act of 1925 was repealed at the instance of a majority of the members of the pension fund; that it was to the interest of the members of the fund that the act of 1933 be passed; that, after the passage of the act of 1933, a majority of the policemen joined the fund; that the act of 1925 was unconstitutional as being arbitrary, unreasonable, and incapable of enforcement; and that, if the position of Newport be sustained, the pension fund will soon be exhausted, to the injury of its members. The court properly held that these pleaded matters did not constitute a defense to Newport's claim.

The court having erred in striking the parts of the defendants' answer setting up that it had no funds out of which to pay the

plaintiff's pension as provided under the act of 1925, all subsequent proceedings were nugatory, and consequently no ruling will be made on the other assignments of error in the record.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., not participating.*