22739. SANDERS, Commissioner, et al. v. HARPER.

ARGUED JANUARY 11, 1965—DECIDED FEBRUARY 4, 1965— REHEARING DENIED FEBRUARY 18, 1965.

*McDonald, Longley, McDonald & McDonald,* for plaintiffs in error.
*Fulcher, Fulcher, Hagler & Harper, J. Walker Harper,* contra.
ALMAND, Justice. The judgment excepted to is the grant of a mandamus absolute and antecedent rulings on the pleadings.

John C. Harper brought his petition against Carl E. Sanders and four other individuals, in their official capacities as members of the Board of Commissioners of the Ordinaries' Fund of Georgia, hereinafter referred to as the "board." He alleged: that on January 1, 1957, he retired as an active ordinary for the County of Richmond and qualified for the monthly sum of $328.13 of benefits under the Ordinaries' Retirement System as provided under Ga. L. 1953, Nov. Sess., p. 362, as amended; that until said Act of 1953 was repealed on March 21, 1958 (Ga. L. 1958, p. 185), he was paid only two-thirds of his retirement benefits; that the repealing Act made no provision for the continued management of the funds; that in March, 1958, he and several other retired ordinaries brought their petition in Richmond Superior Court seeking the appointment of a receiver of the funds that were in the hands of the board under the Act of 1953 at the time of its repeal in March, 1958, and the payment of retired ordinaries' benefits allegedly due them; that the orders overruling the general demurrers were affirmed by the Supreme Court (*Gunby v. Harper*, 216 Ga. 94, 114 SE2d 856); that while said suit was pending, the General Assembly passed two Acts amending the Ordinaries' Retirement Act of 1958 by providing: "that it is the expressed intent of the General Assembly not to divest any right that may have vested in any claimant under the provisions of an Act of the Legislature approved December 22, 1953 (Ga. L. 1953, Nov.-Dec. Session, page 362), as amended"; "that the provisions of this Act shall in no way affect the rights of any former Ordinary who has retired under the provisions of an Act of the Legislature approved December 22, 1953 (Ga. L. 1953, Nov.-Dec. Session, page 362) as subsequently amended." Attached to the petition as an exhibit is the final decree of September 16, 1960, in which it appears that the retirement funds collected under the 1953 Act were turned over to the board as provided under the 1958 Act, who were made parties to the suit, and they were directed to administer said funds in accordance with the provisions of the Act of 1953. It was decreed that the retired ordinaries were entitled to the monthly sums in the amounts set out in the decree and the board was directed to pay petitioner Harper the sum of $328.13 per month from said

fund in accordance with the provisions of the Act of 1953. In paragraph 9 of the petition it was alleged: "That said 1958 Act (Georgia Laws 1958, page 184), though not providing for anyone to succeed to the duties, powers or rights with respect to managing the funds in litigation at that time, did make provisions for the continuation of the vested rights of your petitioner by the amendments approved March 17, 1959 (Georgia Laws 1959, page 269 and page 354), in the new funds being collected, because said 1958 Act, as amended, is a substantial re-enactment of the 1953 Act recognizing and making provision for the continuation of benefits due to your petitioner and the other related Ordinaries falling in the same classification as your petitioner." It was alleged that in event the court should determine that the 1958 Act, as amended, did not make provision for the continuation of petitioner's vested retirement benefits under the Act of 1953, sections 7, 9, 10 and 18 of the 1958 Retirement Act would be unconstitutional as violating Art. I, Sec. X of the Federal Constitution (*Code* § 1-134) prohibiting the States from passing laws impairing contractual obligations and Art. I, Sec. III, Par. II of the Georgia Constitution (*Code Ann.* § 2-302) which prohibits laws impairing contractual obligations.

It was further alleged that pursuant to the decree of September 16, 1960, the defendant board has paid in full his pension benefits through the month of August, 1960; that a demand had been made on the board to pay the monthly benefits accruing since August, 1960, but the demand has been refused. Attached to an amendment to the petition is a copy of the letter from the board addressed to petitioner's counsel, refusing to comply with the demand, in which it was stated: "The Board's position is that the right of your father to retirement benefits was adjudicated and settled by the judgment of the court in the suit which you brought in Richmond County. As you know, the judgment and decree in that case ordered and directed the disbursement of the entire residue of the fund collected under the provisions of the law which created and governed the retirement system under which he retired, according to the provisions thereof and certain interpretations placed thereon by the Court. In compliance with said judgment and decree and with said law, the Board disbursed the residue of said fund on October 18, 1960."

Attached to the petition is an exhibit showing that as of June 30, 1963, there was in the custody of the board, the Ordinaries' Retirement Fund in an amount exceeding $400,000.

The prayers of the petition were for a mandamus absolute requiring the defendant board to pay petitioner the sum of $328.13 per month from October, 1960 to date and all future monthly benefits at the same rate.

The defendant board filed its (a) plea to the jurisdiction, (b) general and special demurrers and (c) its answer. At the hearing for writ of mandamus absolute, the court, without the intervention of a jury, entered its order (a) denying the plea to the jurisdiction as raised by the plea and general demurrer; (b) overruling the demurrers; (c) sustaining the plaintiff's demurrer to paragraph 16 of the defendant board's answer and (d) granted a mandamus absolute as prayed.

In its bill of exceptions the defendant board assigns error upon all these orders.

■ Plea to the Jurisdiction. The petition discloses that the only defendant board member alleged to be a resident of Richmond County is Carl E. Sanders. The plea asserts that Carl E. Sanders, under the provisions of the Ordinaries' Retirement Act of 1958 (Ga. L. 1958, p. 185, § 1), is a member of the board solely because of his position as Governor of Georgia and that under Code § 40-107 which provides that, "The Governor shall reside at the seat of government during his term of office," Carl E. Sanders is a resident of Fulton County and not of Richmond County, which is his residence as an individual.

The court properly held that Carl E. Sanders, for the purposes of this suit, was a resident of Richmond County. *Code* § 40-107 does not remove the Governor's non-official residence or domicile to the seat of government. The action seeking to compel Governor Carl E. Sanders, as a member of the Ordinaries' Fund Retirement Board, to perform his duties as a member of the board is essentially against him in his personal capacity and not an action in rem against the office. *Bryant v. Mitchell,* 195 Ga. 135 (23 SE2d 410); *McCallum v. Bryan,* 213 Ga. 669 (100 SE2d 916).

■ The Rulings on the General Demurrers. The allegations

of the petition which we have set out above clearly disclose that plaintiff retired as an active ordinary under the Ordinaries' Retirement Fund Act of 1953 (Ga. L. 1953, Nov. Sess., p. 362); that he received two-thirds of his monthly benefits from the fund administered by the board under this Act until its repeal on March 21, 1958; that on his petition, with other retired ordinaries, he sought the appointment of a receiver to administer the retirement fund and the payment of his monthly benefits on the contention that the Act of 1958 which repealed the Act of 1953 did not provided for the handling of the Ordinaries' Retirement Fund. This court, in *Gunby v. Harper*, 216 Ga. 94 (114 SE2d 856), affirmed the order of the trial court overruling the demurrers of the defendant banks and savings associations; that thereafter members of the board under the 1958 Act were made parties to plaintiff's prior suit, and the court directed that the funds collected under the 1953 Act be turned over to said board, and it was directed to disburse said fund to the ordinaries who retired prior to the repeal of the 1953 Act. This decree did not in any way direct or control the acts of the board in the management or control of the retirement fund under the Act of 1958. The petition discloses that the retirement fund, under the 1953 Act, has been disbursed and the only funds now in the hands of the board are the funds paid or collected under the provisions of the 1958 Retirement Act.

The 1958 Act repealed the 1953 Act, as amended, in its entirety. A new board, known as "The Commissioners of the Ordinaries' Retirement Fund of Georgia," was created. Only those ordinaries who were active could qualify to participate in the fund. No provision was made for the payment of any sums to ordinaries who were retired at the time the 1953 Act was repealed. There is no provision of any character in the 1958 Act that imposes any duty on the defendant board to pay the plaintiff any sum out of the funds collected under the 1958 Act, but their duties were to administer the retirement fund for the benefit of the ordinaries who qualified after the passage of the 1958 Act.

The plaintiff contends that though the 1958 Act did not make provision for the continuation of his benefits under the 1953 Act,

the subsequent Acts of the General Assembly (Ga. L. 1959, pp. 269, 354) are a substantial re-enactment of the 1953 Act by making provision for the continuation of benefits under the 1953 Act. We do not agree with this contention. All that those two Acts declare is that by repealing the 1953 Act it was not the intent of the General Assembly to divest any right that may have vested in any claimant or in any way affect the rights of any ordinary who had retired under the provisions of the 1953 Act. All that the two amendments to the 1958 Act do is to declare what rights the Constitution of the State had given, viz., protection against the passage of any law that impaired contractual or vested rights under Art. I, Sec. III, Par. II of the State Constitution (*Code Ann.* § 2-302). The vested right which the plaintiff had under the Retirement Act of 1953 was to receive a monthly sum from the funds received by the board administering the funds. Section 12 of the Act of 1953 provided: "In the event the funds derived from the sources provided for in this Act shall not be sufficient at any time to enable the Board to pay in full each person determined to be entitled to the benefits, then the prorated percentage of such payments shall be made to each person until the funds shall be replenished sufficiently to enable the board to resume such payments in accordance with the terms of this Act. Before resuming such payments, all persons who have received deficient payments shall be paid in full. In no event shall the board or a member thereof be liable to any person for any deficiency in payments made under this section." The obligations of the board to pay monthly benefits to retired ordinaries existed only so long as there existed funds to pay these benefits. When these funds were exhausted, the obligation of the board administering the Act ended. The cases relied upon by the plaintiff (*Trotzier v. McElroy*, 182 Ga. 719, 186 SE 817; *Bender v. Anglin*, 207 Ga. 108, 60 SE2d 756; *Davis v. Hunt*, 218 Ga. 630, 129 SE2d 778) are not controlling here for the reason that they involved amendments to or repeal of laws in which payments of pensions to retired officers, employees, or their widows were reduced and there existed a contract between the pensioners and the local governmental unit or the board administering the fund, whereas under the 1953

Act, neither the State nor any of its subdivisions was obligated to contribute any sum to the retirement fund and the Retirement Board was only obligated to pay out benefits from the funds contributed by active ordinaries as long as this fund lasted. Sections 7, 9, 10, and 18 of the 1958 Act are not unconstitutional as violative of the contractual obligation clauses of the Federal and State Constitutions.

■ In paragraph 16 of its answer the board asserted: ". . . the defendants show that they have duly qualified and are acting as Commissioners of the Ordinaries Retirement Fund of Georgia under the provisions of the Act approved March 21, 1958 (Georgia Laws 1958, page 185), and that all funds being collected and held by them are being administered under said Act of 1958, as amended, and that the plaintiff is not entitled to any of said funds. The defendants hold no funds under the said Act of 1953 or any other act to which the plaintiff is entitled." The demurrer of the plaintiff to this paragraph was sustained. Error is assigned on this order. Under the ruling we have made above, it was error to strike this paragraph of the defendant's answer. The defendant board not being obligated to pay plaintiffs any retirement benefits out of the funds collected under the 1958 Act, a plea that the board held no funds under the Act of 1953, if proven, constituted a defense to the petition for mandamus and should not have been stricken. See *Brown v. Newport*, 212 Ga. 715 (95 SE2d 16).

■ The amended petition failing to show that the defendant board was under any legal duty to pay the plaintiffs any sums of money out of the Retirement Fund for retired ordinaries which was under their control and management, the trial court erred in sustaining the plaintiffs' demurrer to paragraph 16 of the defendant board's answer and in overruling the board's general demurrer to the amended petition. All subsequent proceedings were nugatory.

*Judgment reversed. All the Justices concur.*