309 So.2d 306 (1975)
Edward C. PATTERSON, Applicant,
v.
CITY OF BATON ROUGE and Parish of East Baton Rouge, Respondents.
No. 55215.
Supreme Court of Louisiana.
February 24, 1975.
Rehearing Denied March 31, 1975.
*307 Floyd J. Falcon, Jr., Dodd, Barker, Avant, Wall & Thomas, a division of Dodd & Barker, Baton Rouge, for plaintiff-applicant.
Joseph F. Keogh, Parish Atty., Charles E. Pilcher, Asst. Parish Atty., Baton Rouge, for defendants-respondents.
CALOGERO, Justice.
We granted writs in this case to review a decision of the Court of Appeal affirming dismissal of a Baton Rouge fireman's suit for increased retirement benefits.
The precise legal issue has to do with the validity of Section 6(10) (b)[1] of the *308 Ordinance creating the Employees' Retirement System of the City of Baton Rouge and the Parish of East Baton Rouge (hereinafter sometimes referred to as the Employees' Retirement System), a provision which dictates an offset against disability retirement benefits which would otherwise be due an eligible disabled fireman, of amounts paid or payable under the provision of a workmen's compensation statute.
Plaintiff, Edward C. Patterson, was employed as a fireman (fire equipment operator) for the City of Baton Rouge beginning in the year 1951. During such employment he suffered several job related back injuries, the latest of which, on February 21, 1970, rendered him totally and permanently disabled. He was forced to retire because of his disability on April 1, 1971 at which time he began drawing monthly disability retirement benefits in the sum of $299.82. Subsequently, on January 31, 1973, the Nineteenth Judicial District Court rendered judgment in favor of Mr. Patterson, relative to the February 21, 1970 job related accident, for workmen's compensation benefits at the rate of $49.00 per week for 500 weeks. Following the date of such judgment, the amount of his disability retirement benefits, $299.82, was reduced by $212.33, the amount of workmen's compensation benefits (the monthly equivalent of $49.00 per week) which he was then receiving.
Plaintiff contends that the pertinent offset provision of the Retirement System is contrary to the provisions of Louisiana Revised Statutes, Title 23, Section 1163, which prohibits an employer's forcing employees to contribute towards any workmen's compensation benefits payable by the employer. R.S. 23:1163 provides in pertinent part:
"§ 1163. Premiums; contribution by ployees prohibited; penalty.
"It shall be unlawful for any employer, or his agent or representative, to collect from any of his employees directly or indirectly either by way of deduction from the employee's wages, salary, compensation, or otherwise, any amount whatever, or to demand, request, or accept any amount from any employee, either for the purpose of paying the premium in whole or in part on any liability or compensation insurance of any kind whatever on behalf of any employee or to reimburse such employer in whole or in part for any premium on any insurance against any liability whatever to any employee or for the purpose of the employer carrying any such insurance for the employers own account, or to demand or request of any employee to make any payment or contribution for any such purpose of any other person.
". . ."
He contends that Section 6(10)(b) is ineffective because it violates the provisions of R.S. 23:1163. He further argues that the lower courts, in giving effect to 6(10)(b), have unilaterally deprived firemen of the right to workmen's compensation benefits in violation of Article 4, Section 15 of the Louisiana Constitution ("No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid").[2]
The Court of Appeal found R.S. 23:1163 inapplicable for two reasons. First, they found that the statute is only concerned with payment or reimbursement for payment of workmen's compensation insurance premiums and has nothing to do with the *309 situation where, as in this case, the employer-City is self-insured. Furthermore, they concluded that even if the statute were by its terms applicable it could not constitutionally affect the terms of employment between the City of Baton Rouge and their firemen (pension benefits being one of the terms of such employment). In support of this contention they cite LaFleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1st Cir. 1960), wherein it was found that supplemental firemen's pay provided by the Legislature could not apply to the City of Baton Rouge because of Louisiana's 1921 Constitution, Article XIV, Section 3(a) (which authorizes the people of East Baton Rouge Parish to establish a plan of government) and the plan of government adopted pursuant thereto. LaFleur had held that the pay of firemen did not relate to the powers and functions of local government, control of which remained constitutionally in the State Legislature, but rather to the "structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish" of East Baton Rouge, which under the provisions of Article XIV, Section 3(a) vests in the City of Baton Rouge.
We do not agree with the first reason cited by the Court of Appeal for we believe that R.S. 23:1163, in barring an employer's forcing employees to contribute to any workmen's compensation benefits payable, is applicable by its terms to the self-insured City of Baton Rouge ("it shall be unlawful for any employer ... to collect from any of his employees directly or indirectly ... any amount whatever... either for the purpose of... or for the purpose of the employer carrying any such insurance for the employers own account ...") (Emphasis added). R.S. 23:1163 is applicable. The City of Baton Rouge may not force its employees to contribute to the City or to the City's funding of its self-insured workmen's compensation program.
And we do not find it necessary in this case to determine whether the opinion of the First Circuit Court of Appeal in LaFleur v. City of Baton Rouge, supra, was correct in its holding that the pay of firemen in Baton Rouge was constitutionally outside the province of the Louisiana State Legislature, for even if the pay of firemen can be construed to be within the constitutionally ordained structure and organization of the City and beyond the province of the Legislature, surely Louisiana's workmen's compensation statute as a general law applicable indiscriminately to employers and employees in the State is and must be applicable to the City of Baton Rouge. LaFleur dealt with minimum wages for a particular class of employees of local government, i. e., municipal firemen, while R.S. 23:1163 deals with all types of employees of all types of employers whether they be local governments or private employers.
While we are not prepared to accept the reasons upon which the Court of Appeal relied, we nonetheless believe that the result below was correct.
In our opinion the City of Baton Rouge did not cause its firemen to contribute to the City or to the City's funding of its self-insured workmen's compensation program.
Plaintiff received and will receive from the City of Baton Rouge, under the agreed upon facts, each of the five hundred $49.00 weekly payments due him.
The reduction of his monthly disability benefits from $299.82 to $87.83 is a separate and distinct matter, which is dictated by the provisions of the Retirement System ordinance. The sole question we are presented is whether that provision of the ordinance, in effect fixing limited pension whose injuries, being work related, have benefits for those disabled employees resulted in the receipt of workmen's compensation benefits after disability retirement, is legal.
*310 In considering the legality of § 6(10)(b) we shall examine the provision in light of the following considerations:
1. Is the provision one which is without rhyme or reason having no rational or legitimate purpose?
2. Does it violate Article 4, Section 15 of the 1921 Louisiana Constitution by impairing the obligation of contracts or divesting vested rights?
3. Does it deny equal protection to a limited class of employees, i. e., those whose disability arises out of work connected rather than non-work connected accidents?
4. Does it violate any provision of Louisiana statutory law or any overriding public policy of the State of Louisiana?
To answer these questions we must first review the legislative history of the Retirement System ordinances and the reason for enacting Section 6(10) (b).
The employee's Retirement System with which we are here concerned was created by Ordinance 235. That ordinance was adopted October 14, 1953 and was made effective December 31, 1953. As originally enacted the ordinance did not cover the firemen of the City of Baton Rouge whose pension system at that time was covered by Act 299 of 1946. The City contends that the Firemen's Pension and Relief Fund was virtually insolvent. So, Ordinance 474 amending Ordinance 235 was adopted May 31, 1956 bringing the firemen (as well as the policemen) of the City of Baton Rouge into the Employees' Retirement System. Later that year, the Employees' Retirement System was amended by an ordinance effective October 24, 1956 which engrafted onto the System Section 6(10) (b), an offset provision the purpose of which was to enhance the actuarial soundness of the System.
We would be inclined to question the actuarial impact upon the retirement system of denying full retirement benefits to the number of disability retirees who were projected at the outset as likely to be drawing workmen's compensation after retirement for disability. But the state of this record does not permit us to do so. All that we have before us is the stipulated testimony without cross-examination of W. E. Groves, the actuary for the Retirement System.
Counsel for plaintiff objected to the relevance of Mr. Groves' testimony (an objection we find without merit), then stipulated, along with defendant's counsel, that if Mr. Groves were present in court he would testify as follows:
"That the provision in the retirement system ordinance which provides that any amount paid under the provisions of the workmen's compensation statute shall be set off against and payable in lieu of benefits paid under the provisions of the retirement system was written into the retirement plan on his advice when the ordinance was originally drawn and the plan adopted. The reasons being that over a period of time many firemen as well as other employees, would take disability retirement after incurring disability as a result of accidents for which workmen's compensation would be payable. The amounts paid into the retirement system by both the employer and employees is governed by the amounts expected to be paid out and the offset provided for workmen's compensation reduced the amounts to be paid into the plan. The offset does not result in an employee on disability retirement drawing less than an employee who has taken regular retirement, the number of years worked and age of employee considered.
"The rates of contribution were calculated with the workmen's compensation offset as one of the factors and that the actuarial soundness of the entire system would be adversely affected if the offset is removed." (Emphasis provided).
*311 Accepting then as we must that the 6(10)(b) offset is necessary in order to reduce the amount of contributions required of the employees and the City of Baton Rouge,[3] and that the actuarial soundness of the system would be adversely affected but for such offset, the answer to the first question posed above is inescapable, i. e., there was a rational and ostensibly legitimate purpose for inclusion of the provision.
Does Section 6(10)(b) impair the obligation of contracts or divest vested rights in violation of Article 4, Section 15 of the 1921 Louisiana Constitution? This question is posed because of the fact that the Baton Rouge firemen prior to October 1956 were covered by a retirement system which did not include 6(10)(b) type offsets. Under the retirement plan in effect in 1951 when plaintiff joined the Baton Rouge Fire Department and under the Employees' Retirement System into which Baton Rouge firemen were placed in May 1956, there was no such offset provision.[4] Thus, plaintiff for the first 5 years he served as a fireman was in effect "promised" a conditional pension for disability upon reaching retirement eligibility, without any workmen's compensation offset. Did this "promise" constitute a contract obligation? Did plaintiff prior to October 1956 have a vested right to this conditional expectancy?
The courts in this country are almost uniform in holding that the details, such as rate of contribution, benefits and the like, of a contributory retirement system may be *312 modified to the prejudice of the employee unless he has a vested interest in the system. See 52 A.L.R.2d 437 (1957) and the cases cited therein.
Vesting is statutorily or constitutionally controlled in a limited number of jurisdictions in this country. In New York the state Constitution provides specifically that membership in any pension or retirement system of the state or of a civil division thereof, shall be a contractual relationship the benefits of which shall not be diminished or impaired. N.Y.Const., Art. 5, Section 7 (1894).
Ohio by statute vests in firemen and policemen the right to receive retirement benefits after the pension has been granted. Ohio Rev.Code Ann. 741.15, 741.46.
In the remaining states three different jurisprudential treatments prevail. One of these is that an employee has no vested right in a pension plan either before or after the pension has been granted. Londrigan v. Board of Trustees, 7 Ill.App.3d 572, 288 N.E.2d 125 (1972); State ex rel. Parker v. Board of Education, 155 Kan. 754, 129 P.2d 265 (1942) (dictum).
Another is that an employee gains a vested right only after he becomes eligible for a pension. Dorsey v. State, 283 A.2d 834 (Del.1971); Pyle v. Webb, 253 Ark. 940, 489 S.W.2d 796 (1973); Murphy v. Wayne County Employees' Retirement Board of Trustees, 35 Mich.App. 480, 192 N.W.2d 568 (1971).
California[5] (as well as Oregon, Washington, Idaho and Arizona[6]) has developed the rule that an employee gains a limited vested right after rendition of services under the pension plan but that this vested right is subject to reasonable modification to keep the system sound; and the employee has a fully vested right once he fulfills the requirements and is thus eligible for a pension.
Several Louisiana cases have touched on this vesting question. In Meyer v. Board of Trustees, 199 La. 633, 6 So.2d 713 (1942) this Court, without detailed discussion (since it was not an issue in the case), stated that a fireman's widow's right to a pension became vested after the fulfillment of the statutory requirements.
In Bowen v. Board of Trustees, 76 So.2d 430 (Orl.App.1954) writ denied February 14, 1955, plaintiff Bowen was a New Orleans police officer who filed suit for declaratory judgment seeking to establish the invalidity of a statute affecting his right to a pension. The statute which brought about the suit had raised the required length of service from sixteen years, as it was when Bowen joined the department, to twenty years. The appellate court found the statute to be valid on the basis that the legislature could alter the details of a system to strengthen its soundness, impliedly negating any vesting prior to pension eligibility. The Bowen court quoted approvingly the following passage from Talbott v. Independent School District, 230 Iowa 949, 299 N. W. 556, 137 A.L.R. 234, as follows:
"The Legislature may from time to time, within the confines of that established relation, alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit. Changes in details, such as length of service required, contributions needed, and age requirements, to keep the fund on sound actuarial practices, are essential. Flexibility in component parts is a paramount necessity to guard against changed conditions and to permit keeping abreast with actuarial science." 230 Iowa at 971, 299 N. W. at 567, 137 A.L.R. at 248.
*313 See also Adolph v. S. & W. B., 202 So. 2d 664 (La.App. 4th Cir. 1967); State ex rel. Murray v. Board, 259 So.2d 613 (La. App. 4th Cir. 1972).
We believe that plaintiff under the public retirement system provided by the City of Baton Rouge is afforded no vested right to retirement benefits prior to establishing eligibility for same, and that such treatment does not offend Article 4, Section 15 of the 1921 Louisiana Constitution.
We turn now to the third question posed hereinabove. Does 6(10) (b) deny equal protection to a limited class of employees, i. e., those whose disability arises out of work connected (or service connected) rather than non-work connected (or non-service connected) accidents. The discrimination if it may be said to exist occurs first, not following the fireman's sustaining a disabling work connected injury, but at the outset of each fireman's service. The provision is applicable to all firemen. Each bears the same risk that he may become eligible for a disability benefit under circumstances where a workman's compensation offset will be applicable. No individual or identifiable group of firemen is at the outset being subjected to discrimination. Under these circumstances discrimination if any could hardly be termed invidious. Furthermore, it should be noted, as we discern the different treatment afforded service connected disability retirees and non-service connected disability retirees, that there are significant discriminatory provisions of the Retirement System favorable to the service connected disability retiree and unfavorable to the non-service connected disability retiree.
The latter must have 10 years of credited service, must be 55 years of age in order to receive a service retirement allowance (apparently a benefits advantage), and in computing benefits are entitled to no minimum pension, while the former have no minimum requirement for years of credited service, are allowed the service retirement allowance if 50 years of age, and in computing benefits, are entitled to a minimum of 50% of average compensation. Sections 6(2)(c)(ii) and 6(2)(c)(iii) of the Retirement System.
In Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), the United States Supreme Court entertained an attack on 42 U.S.C. § 424a, the provision of the Social Security law which requires that there be offset against Social Security benefits otherwise due, state workmen's compensation benefits being received. The Supreme Court held that this provision had a rational basis, did not invidiously discriminate, and was not violative of the 14th Amendment due process or 5th Amendment equal protection.
We find similarly that the workmen's compensation offset [of 6(10) (b)] against disability retirement benefits under the Retirement System does not deny equal protection nor offend due process under the Federal or State Constitutions.
We turn now to the fourth query posed hereinabove. Does 6(10)(b) violate any provision of Louisiana statutory law or any overriding public policy of the State of Louisiana.
We are referred to no provision of statutory law which precludes in a pension plan the inclusion of a benefits formula which permits in the interest of actuarial soundness and reduced contribution, the offset (and corresponding reduction of benefits) of workmen's compensation benefits being received. Nor are we aware of any.
As already noted R.S. 23:1193 in our opinion has no effect upon a pension benefits formula of a public retirement plan. As earlier indicated the employee in receiving limited benefits because of the compensation offset is not helping to fund the City's compensation obligation. He is simply receiving a predetermined smaller pension benefit from the retirement system.
*314 Furthermore, we are aware of no overriding public policy of this State which dictates the invalidation of the pertinent benefits formula of the Employees' Retirement System.
Interestingly, the Social Security law at 42 U.S.C. § 424a allows the reduction of a Social Security pension otherwise due, by amounts being received under state workmen's compensation statutes (except where the state workmen's compensation law provides for an offset for social security). Federal public policy apparently is not offended by reducing federal social security benefits by the amount of workmen's compensation being received by the employee.
There is indeed a temptation to hold the workmen's compensation offset invalid on cursory examination, for it appears that the employee is helping to bear the compensation obligation of the City of Baton Rouge. In actuality this is not the case. If the 6(10) (b) type workmen's compensation offset in public retirement systems is to be prohibited such directs itself to State Legislature rather than to this Court.
In summary, we find that Section 6(10) (b) of the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge has a rational and legitimate purpose, does not violate Article 4, Section 15 of the 1921 Constitution, does not deny equal protection or offend due process, and does not violate any provision of Louisiana Statutory law nor overriding public policy of the State. Accordingly the judgments of the trial court and the Court of Appeal in denying the relief sought herein by plaintiff is affirmed.
SUMMERS, J., dissents and assigns reasons.
DIXON, J., dissents with reasons.
BARHAM, J., dissents for reasons assigned by DIXON, J.
DIXON, Justice (dissenting).
I respectfully dissent.
A fireman injured in the course and scope of his employment is entitled to workmen's compensation benefits. The law prohibits (R.S. 23:1163) an employer from requiring the employee to contribute, directly or indirectly, in any way, toward the cost of workmen's compensation.
All injured firemen are entitled to certain disability retirement benefits. All firemen contribute to the retirement system. But a fireman injured in the course and scope of his employment does not receive benefits which equal disability retirement benefits plus workmen's compensation. His disability retirement benefits, toward the cost of which he has contributed, are reduced by the amount of workmen's compensation benefits he is entitled to receive.
As noted in the majority opinion, this practice reduces the cost of the retirement system to those who contribute to it. The city and parish contribute to the retirement system. Therefore, this contribution by the injured fireman to the retirement system (part of the benefits of which the fireman does not receive if he is entitled to workmen's compensation) is an indirect payment by the fireman toward the cost of workmen's compensation benefits.
The question is not whether the system is reasonable. It is. The question is whether it is legal. It seems to me to be a clear violation of R.S. 23-1163.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by Mr. Justice Dixon.
NOTES
[1] Section 6(10) (b) provides:

"Any amounts which may be paid or payable under the provisions of any workmen's Compensation Statute or similar law, to a member or to the dependents of a member on account of any accidental disability or accidental death shall, in such manner as the Board shall approve, be offset against and payable in lieu of any benefits payable out of funds provided by the City and Parish under the provisions of the Retirement System on account of the same accidental disability or on account of death."
[2] The counterpart provision of the 1974 Constitution is Art. 1, Sec. 23: "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted."
[3] Section 6(10) (b) in describing the offset states that the amounts of compensation being received shall "be offset against and payable in lieu of any benefits' payable out of funds provided by the City and Parish under the provisions of the Retirement System." While on first reading this provision would appear to give the City alone and not the System the advantage of the offset, the impact of the provision and its salutary economic effect upon the System becomes more apparent upon scrutinizing the plan. Generally under the plan single sum benefits are actually made up of two components, an annuity, which is the monthly sum acquirable by the employee's accumulated contributions and interest, and a pension, which is ascribable to the City's contribution to the pension fund. For whatever reason, perhaps to avoid impinging upon such annuity as is attributable to the employee's contribution alone, the offset of 6(10) (b) is allowed only against benefits payable out of funds provided by the City. Thus, if in plaintiff's case the annuity portion of the $300 monthly benefit exceeds $87.83, it would not under 6(10) (b) be proper to offset the full $212.33 monthly compensation being received. It is not clear from the record what portion of the $300 monthly sum represents the annuity attributable to the employee contribution and what portion represents the pension attributable to the funds provided by the City. However, we note that this 44 year old plaintiff (in 1971) had contributed, with interest, the sum of $5353.61. It would seem that such sum would not likely purchase a lifetime monthly annuity equal to or in excess of $87.00. At any rate, plaintiff's complaint in these proceedings is directed simply at the applicability of the offset, provision generally. He is not contending that the compensation is being offset against benefits payable out of funds contributed by him to the system.

Furthermore, the fact that the offset is being allowed against benefits payable out of funds provided by the City does not negate the actuary's testimony to the effect that both contributors, employee and City, got the advantage of reduced contributions, for assuming as we must that without offset increased contributions would be required, there is no indication that the Council for the Parish of East Baton Rouge would not have had the right in establishing and overseeing the Retirement System to impose that burden partially upon each, the contributing employees and the City of Baton Rouge.
[4] It should be noted here that the stipulated testimony of Mr. Groves included a statement that the workmen's compensation offset "was written into the Retirement Plan on his advice when the ordinance was originally drawn and the plan adopted." However, the record indicates that 6(10) (b) was not included in either the ordinance creating the Employees' Retirement System or the ordinance bringing policemen and firemen into the Employees' Retirement System but rather was engrafted onto the system in October 1956. For purposes of this opinion we will assume that the record does not establish, as testified by Mr. Groves, that the offset was included in the retirement plan at inception.
[5] Kern v. Long Beach, 29 Cal.2d 848, 179 P.2d 799 (1947).
[6] Taylor v. Multnomah County Deputy Sheriff's Retirement Board, 510 P.2d 339 (Oregon 1973); Weaver v. Evans, 80 Wash.2d 461, 495 P.2d 639 (1972); Hanson v. Idaho Falls, 92 Idaho 512, 446 P.2d 634 (1968); Yeazell v. Copins, 98 Ariz. 109, 402 P.2d 541 (1965).