333 So.2d 676 (1976)
Clyde B. BUTLER, Plaintiff-Appellant,
v.
The BOARD OF TRUSTEES OF the ELECTRICAL WORKERS PENSION AND RELIEF FUND OF the CITY OF MONROE, Louisiana and the City of Monroe, Louisiana, Defendants-Appellees.
No. 12902.
Court of Appeal of Louisiana, Second Circuit.
May 24, 1976.
Rehearing Denied July 7, 1976.
Writ Refused September 24, 1976.
*677 Mengis, Roberts, Durant & Carpenter, by Warren L. Mengis, Monroe, for plaintiff-appellant.
Ralph J. Wicker, Asst. City Atty., Monroe, for defendants-appellees.
Before BOLIN, PRICE and MARVIN, JJ.
En Banc. Rehearing Denied July 7, 1976.
MARVIN, Judge.
Plaintiff, a permanently disabled employee of the defendant city, sought to have the city ordered to cease deducting from monthly disability retirement benefits paid him under a pension and relief fund an amount equal to weekly workmen's compensation benefits paid him by the workmen's compensation insurer of the city for the disability. The lower court rejected the employee's demands for this relief. We affirm on the authority of Patterson v. City of Baton Rouge, 309 So.2d 306 (La. 1975).
Plaintiff was injured February 4, 1974, and was eventually placed on disability retirement status effective September 1, 1974. His disability retirement benefits are being paid under the Electrical Workers Pension and Relief Fund of the City of Monroe. This fund was created by the Legislature under Act 283 of 1956, amended by Act 425 of 1960 and by Act 112 of 1967. Plaintiff began his employment with the city in 1966 and contributed five percent of his wages to the fund during his employment.
Plaintiff contends that the legislative acts mentioned do not provide for the integration of workmen's compensation benefits received by the disabled employee into the formula for computing disability benefits *678 under the fund. The 1956 Act provided in part:
"A member who has become permanently disabled ... shall ... receive a sum per month, equal to two-thirds (2/3) of the employee's monthly salary averaged over a period of the best Five (5) years prior to date of disability, less any compensation paid, ..."
The 1960 Act provided that a disabled member shall receive a sum per month
"... which when combined with Social Security benefits received by him, if any, equal to two-thirds of the employee's monthly salary averaged over a period of the best five years prior to the date of disability, less any compensation paid and less any workmen's compensation or Social Security benefits received,..."
The 1967 Act provided that a disabled member shall receive a sum per month
"... which, when combined with Social Security benefits received by him, if any, shall be equal to two-thirds of the employee's monthly salary averaged over a period of the best five years prior to the date of disability less any [workmen's] compensation [or Social Security benefits received], ..."[1]
Plaintiff's counsel deftly argues that the terms of the statutes such as "less any workmen's compensation," were not intended to allow the offset complained of but were intended to relate only to the averaging of the members' salary. Plaintiff contends that variance in language and punctuation (the omission of the comma after the word "disability") in the 1967 amendment strengthens his argument as to legislative intent under the prior enactments. We disagree.
Plaintiff alternatively contends that R.S. 23:1163 prohibits implementation of the statute even should it be interpreted contrary to plaintiff's contentions.[2]
In Patterson, supra, a Baton Rouge fireman saw his disability retirement offset by the amount he was then receiving as workmen's compensation benefits from the city which was self-insured. The ordinance creating the disability retirement benefits provided for such offset.[3] The court held that the offset did not cause its firemen to contribute to the city's funding of its self-insured workmen's compensation program.
"As already noted R.S. 23:1193 in our opinion has no effect upon a pension benefits formula of a public retirement plan. As earlier indicated the employee *679 in receiving limited benefits because of the compensation offset is not helping to fund the City's compensation obligation. He is simply receiving a predetermined smaller pension benefit from the retirement system.
"Furthermore, we are aware of no overriding public policy of this State which dictates the invalidation of the pertinent benefits formula of the Employees' Retirement System.
"Interestingly, the Social Security law at 42 U.S.C. § 424a allows the reduction of a Social Security pension otherwise due, by amounts being received under state workmen's compensation statutes (except where the state workmen's compensation law provides for an offset for social security). Federal public policy apparently is not offended by reducing federal social security benefits by the amount of workmen's compensation being received by the employee.
"There is indeed a temptation to hold the workmen's compensation offset invalid on cursory examination, for it appears that the employee is helping to bear the compensation obligation of the City of Baton Rouge. In actuality this is not the case. If the 6(10)(b) type workmen's compensation offset in public retirement systems is to be prohibited such directs itself to State Legislature rather than to this Court." [4]
Plaintiff here does not quarrel with the integration of social security benefits into the disability pension.
Plaintiff argues here that Patterson would have held the Baton Rouge plan without rational basis and therefore invalid, were it not for the finding there that the actuarial soundness of the plan depended upon the integration of workmen's compensation benefits. Plaintiff then argues that there was no proof here that the actuarial soundness of the Monroe plan depended upon the integration of workmen's compensation benefits.
In Patterson, the court did observe that it would be inclined to question the actuarial impact of integrating workmen's compensation into the Baton Rouge disability retirement plan were it not for the testimony of the actuary for the retirement system. In Baton Rouge, however, the retirement system was created in 1953. Early in 1956, firemen were brought under the system. Late in 1956, the offset provision was adopted integrating workmen's compensation benefits into the disability retirement plan. Here, the integration of workmen's compensation benefits into the Monroe disability retirement plan occurred when the plan was initially adopted by legislative act.
An employee under such a disability plan could not be working full time at the same time he was drawing benefits under the workmen's compensation law or the social security law. For this reason alone, we cannot accept plaintiff's contention that the language in the acts relates to the averaging of the salary rather than to offsetting benefits.
Plaintiff makes no attack upon the constitutionality of any of the acts mentioned which created or amended the Monroe disability retirement plan. We are not to presume any act invalid. See Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958).
In Patterson, the court noted that the public policy of the state did not dictate invalidation of the integration of workmen's compensation benefits into the disability benefits formula of an employee retirement plan. See 309 So.2d 314.
At appellant's cost, judgment is
Affirmed.
NOTES
[1] The language of the other Acts is reproduced only to illustrate plaintiff's argument as to legislative intent in interpreting the prior acts.
[2] R.S. 23:1163 reads as follows:

"It shall be unlawful for any employer, or his agent or representative, to collect from any of his employees directly or indirectly either by way of deduction from the employee's wages, salary, compensation, or otherwise, any amount whatever, or to demand, request, or accept any amount from any employee, either for the purpose of paying the premium in whole or in part on any liability or compensation insurance of any kind whatever on behalf of any employee or to reimburse such employer in whole or in part for any premium on any insurance against any liability whatever to any employee or for the purpose of the employer carrying any such insurance for the employers own account, or to demand or request of any employee to make any payment or contribution for any such purpose to any other person.
"Nothing herein shall be construed to prevent any employer from carrying his own insurance towards his own employee; nothing herein shall apply to an employer qualified under the laws of this State to engage in the liability insurance business.
"Whoever violates any provision of this Section shall be fined not more than five hundred dollars, or imprisoned for not more than one year, or both."
[3] Referred to in Patterson as "6(10)b", which was the section number of the ordinance providing for the offset.
[4] 309 So.2d 306, 313-314 (La.1975).