## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-752


DAREN COUTEE, ET AL.

VERSUS

THE MUNICIPAL POLICE EMPLOYEES'
RETIREMENT SYSTEM, ET AL.


************


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 209,399,
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE


************


## MICHAEL G. SULLIVAN
## JUDGE


************


Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell,
Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**


**Jacques M. Roy**
**Attorney at Law**
**1100 M. L. King Drive**
**Alexandria, Louisiana 71301**
**(318) 487-9537**
**Counsel for Plaintiffs/Appellants:**
  **Daren Coutee**
  **Edwin Beckham**
  **Ray K. Delcomyn**
  **J. W. Ferrier**
  **William R. Butler**
  **Gary D. Dunn**
  **George Richmond**
  **Lyndel Callahan**
  **Jerry D. Hussey**
  **Oscar E. Williams**
  **Charles E. Johnson, Sr.**
  **Walter Urena**
  **Richard M. Smith**

**Howard B. Gist, III**
**The Gist Firm**
**Post Office Box 13705**
**Alexandria, Louisiana 71315**
**(318) 448-1632**
**Counsel for Defendant/Appellee:**
      **City of Alexandria**

**George C. Gaiennie, III**
**Hughes & LaFleur**
**Post Office Box 1831**
**Alexandria, Louisiana 71309-1831**
**(318) 443-4090**
**Counsel for Defendant/Appellee:**
      **City of Alexandria**

**Daniel E. Broussard, Jr.**
**Broussard, Bolton, Halcomb & Vizzier**
**Post Office Box 1311**
**Alexandria, Louisiana 71309**
**(318) 487-4589**
**Counsel for Secondary Intervenor/Appellant:**
      **James W. Chevalier**

SULLIVAN, Judge.

Plaintiffs are retirees from the police force of the City of Alexandria (the City).[1] They sued the City and the Municipal Police Employees' Retirement System (MPERS), seeking a money judgment and other relief to recover losses in retirement benefits allegedly caused by the 1983 merger of the City's police force with MPERS. The trial court granted summary judgment in favor of the City, dismissing all claims against it, then denied Plaintiffs' motion for a new trial. While the motion for a new trial was pending, Plaintiffs sought leave to amend their petition to add another Plaintiff,[2] to add as a Defendant the Police Pension and Relief Fund of the City (the Relief Fund), and to assert additional claims against the City and MPERS. The trial court denied this motion as moot based upon its ruling on summary judgment.

On appeal, Plaintiffs argue that the trial court erred (1) in denying as moot their motion to amend, (2) in granting the City's motion for summary judgment, and (3) in denying their motion for a new trial. Because the merits of the first assignment of error may depend upon the resolution of the second and third assignments, we will discuss the latter two first.

## Factual and Procedural Background

Prior to the legislative establishment of MPERS by 1973 La. Acts No. 189, the Relief Fund administered the City's police retirement plan pursuant to 1914 La. Acts No. 290. Upon the creation of MPERS, all full-time officers joining the police force after July 1, 1973 were required to become members of MPERS, but full-time officers

---

[1]The original Plaintiffs are Daren Coutee, Edwin Beckham, Ray K. Delcomyn, J. W. Ferrier, William R. Butler, Gary D. Dunn, George Richmond, Lyndel Callahan, Jerry D. Hussey, Oscar E. Williams, Charles E. Johnson, Sr., Walter Urena, and Richard M. Smith. James W. Chevalier later intervened as a Plaintiff. In this opinion, the original Plaintiffs and the Intervenor are collectively referred to as "Plaintiffs."

[2]Samuel Mayeaux was identified as the additional Plaintiff sought to be named.

employed before that date were given the choice of remaining with the Relief Fund or transferring into MPERS. The two retirement systems, however, had different rules governing the eligibility for retirement and the calculation of retirement, disability, and survivor benefits. Significantly, the Relief Fund authorized retirement upon twenty years of service at any age, whereas MPERS required twenty-five years of service to retire at any age, with only those reaching age fifty being eligible to retire after twenty years. Differences in the calculation of benefits also resulted in the Relief Fund offering a higher retirement benefit.

By 1982 La. Acts No. 585, the legislature amended La.R.S. 11:3501(D) to require municipalities with a Relief Fund to merge its active members with MPERS, including those who had previously elected to remain with the Relief Fund. Under La.R.S. 11:3501(D)(1), "Any municipality which has a police retirement plan established under R.S. 11:3501 et seq. shall merge its active members into the Municipal Police Employees' Retirement System, and such merger shall be binding on all parties." Addressing one difference in the retirement systems, La.R.S. 11:3501(D)(1) (emphasis added) continues:

> The municipalities which provide retirement with sixteen, twenty, or twenty-five years of service credit at any age *shall guarantee and pay its regular retirement benefits* to any employee who takes a deferred retirement with sixteen, twenty, or twenty-five years of service credit prior to reaching age fifty or fifty-five *until the retiree reaches the age of fifty or fifty-five and is eligible to receive a benefit from the Municipal Police Employees' Retirement System.* The municipality paying the benefit shall, in computing said benefit, use the salary and all years of service credit that would have been used had no merger taken place . . . .

Thus, under this statute, the City was required to pay the full retirement benefit as calculated by the Relief Fund to any fund member who retired with twenty years

2

of service, but only until that member reached fifty years of age and was eligible to receive a benefit from MPERS.

Plaintiffs are former officers who retired prior to age fifty with twenty years of service. The City paid them retirement benefits calculated at the Relief Fund rate until they reached fifty years of age, at which time they began receiving retirement benefits from MPERS, but at a lower rate than that paid by the City.

Plaintiffs filed suit on July 3, 2002, alleging that the merger divested them of vested rights, that the City and MPERS breached implied or express "no loss" agreements that Plaintiffs relied upon to their detriment, that the City and MPERS failed to explain or misrepresented the nature of the legislative scheme, and that the City either lost or suppressed information regarding the alleged "no loss" agreements. More specifically, Plaintiffs alleged that, before the 1983 merger, civil service employees and other police officials represented to them that "no harm" would occur as a result of the merger or that any loss would be temporary and made up in the first year and that the City would make up the difference if any harm did befall potential retirees. Plaintiffs also pointed to a letter written in 2001 by the City's mayor at that time, Edward Randolph, who expressed his understanding that the officers in the City's retirement system were to be merged into MPERS "without any loss of benefit."[3]

In its answer, the City denied that it ever made a "no loss" guarantee and alleged the absence of any City ordinance authorizing a contract for the payment of benefits beyond those required by statute. The City further pointed out that the

_____

[3]In that letter, Mayor Randolph also stated that the City "would like to explore the possibility of funding the difference" between the two systems' benefits.

merger was the result of legislative mandate; therefore, any loss of benefits to which Plaintiffs had a vested right would be owed by the State through MPERS.

In granting summary judgment for the City, the trial court first rejected Plaintiffs' claim that the merger acted to deprive them of vested rights, as no Plaintiff had reached the age of retirement at that time. The trial court then concluded there was no genuine issue of material fact that Plaintiffs would not prevail on a breach of contract claim, given the absence of proof as to an ordinance confirming a "no loss" guarantee or as to representations made by anyone with authority to bind the City in the absence of such an ordinance. In response to Plaintiffs' motion for a new trial, the trial court issued a second opinion rejecting Plaintiffs' argument that the Relief Fund's Board of Trustees (the Board) had authority to bind the City under facts of this case. Specifically, the trial court found that, even if the Board issued a "no loss" guarantee, such an action would exceed its legislative authority because it would have required the City to pay funds that it did not statutorily owe. For this reason, the trial court also rejected Plaintiffs' claims of spoliation, believing that the City could not be bound by such action without the adoption of an ordinance.

**Discussion**

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. *Schroeder v. Bd. of Sup'rs of La. State Univ.*, 591 So.2d 342 (La.1991). The mover is entitled to judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Additionally, summary judgment

4

procedure is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

Although our review on summary judgment is *de novo*, without deference to the trial court's factual findings, we nonetheless find that the trial court's reasons for judgment are correct in the present case, and we adopt both rulings of the trial court as our own, attaching them as an appendix to this opinion. We write further to amplify them based upon jurisprudence and evidence not mentioned therein.

On appeal, Plaintiffs attack the trial court's conclusion that the 1983 merger did not deprive them of any vested rights. To the contrary, we find that the trial court's conclusion is further supported by the following passage from *Smith v. Board of Trustees of Louisiana State Employees' Retirement System*, 02-2161, p. 11 (La. 6/27/03), 851 So.2d 1100, 1107-08, *cert. denied*, 540 U.S. 1179, 124 S.Ct. 1414 (2004) (emphasis added):

> Prior to the achievement of eligibility, courts have deemed the right [to retirement benefits] to be inchoate and the details of a contributory retirement system, such *as rate of contribution, benefits, length of service, and age requirements* could be modified to the prejudice of the employee. *Patterson v. City of Baton Rouge*, 309 So.2d 306 (La.1975); *Faulk v. State*, 382 So.2d 992 (La.App. 1 Cir.1980); *State, ex rel. Murray v. Board of Trustees of Police Pension Fund for City of New Orleans*, 259 So.2d 613 (La.App. 4 Cir.1972); *Adolph v. Sewerage & Water Board Pension Committee*, 202 So.2d 664 (La.App. 4 Cir.1967); *Young v. Department of Highways*, 160 So.2d 391 (La.App. 1 Cir.1964); *Bowen v. Board of Trustees of Police Pension Fund*, 76 So.2d 430 (La.App.Orl.1954). In particular, it has been held that the legislature can "validly enact laws to change the inchoate retirement rights of employees to (1) increase the required length of service from sixteen years to twenty years (*Bowen*), (2) offset disability benefit payments under a retirement system by the amount of worker's compensation benefits under a retirement system by the amount of worker's compensation benefits received from the same disability (*Patterson*); (3) require an employee who has membership in two public retirement systems to choose one and require that the system refund all contributions at the rate of 5% simple interest (*Faulk*), and (4) change

5

an alternate retirement program of age 70 or 15 years service to a mandatory retirement at the age of 65 (*Young*)." *Louisiana State Troopers Association, Inc. v. Louisiana State Police Retirement Board*, 417 So.2d 440, 443-44 (La.App. 1 Cir.1982).

*Smith* concerned a legislative scheme that allowed rehired state retirees to receive their salaries and retirement benefits after twelve months of re-employment. The supreme court had to decide whether the legislature's repeal of that program before any of the rehired retirees had been employed for twelve months violated the either the state constitutional prohibition against diminishing or impairing state employees "accrued benefits" (La.Const. Art. X, § 29(E)(5)) or the contract clauses of the federal and state constitutions. The supreme court, with two justices dissenting, found no constitutional violations. Even Justice Knoll, who authored a strong dissent in *Smith*, recognized that legislative changes to a retirement system made before retirement are permissible:

> Although this Court has upheld numerous challenges to legislative modifications of the state retirement system, in each instance the legislature altered the pension provisions of state employees *before* retirement, such as by reducing the contribution rate or increasing the mandatory years of service. In my opinion, it is one matter to adjust employees' retirement packages years before they retire—it is quite another matter to retroactively withdraw the benefits reasonably relied upon by state employees in making life impacting decisions.

*Id.* at 1116, fn.6.

Plaintiffs also argue that the trial court erred in concluding that the Board of the Relief Fund did not have authority to bind the City to a "no loss" guarantee, citing *Ogburn v. City of Shreveport*, 614 So.2d 748 (La.App. 2 Cir.), *writ denied*, 619 So.2d 547 (La.1993). We find *Ogburn* distinguishable. In that case, a "no loss" guarantee was made pursuant to a statute applicable only to the City of Shreveport, and further,

6

in that guarantee, the parties specifically designated the Board of Trustees of the Shreveport Fund as the entity responsible for settling disputes that may arise under the guarantee. Additionally, the City of Shreveport failed to take an administrative appeal from an adverse decision of the Board. Under those circumstances, the court held that a mandamus action against the City of Shreveport was the proper procedure to enforce the Board's decision. Those considerations are not present in the case *sub judice*.

Plaintiffs also cite the deposition testimony of Thomas Cardwell, a member of the Board at the time of the merger, as evidence that a "no loss" guarantee was made. In his deposition, Mr. Cardwell did testify that police officers were told that they would not lose any retirement benefits because of the merger. However, Mr. Cardwell's testimony does not establish that the City ever made such a guarantee. According to Mr. Cardwell, he understood that, once a police officer who retired after twenty years of service reached the age of fifty, the officer would receive a check *from MPERS in the same amount* as that paid by the City before the officer reached fifty. Mr. Cardwell also testified that he believed this consideration was factored into the amount that the City paid to MPERS to complete the merger. As he explained (emphasis added):

> My understanding was that the benefits were guaranteed him under the city system . . . and the only difference was that when he changed from the city system to the state system at age 50 was that he would no longer receive a check from the city, *but he would receive a check from the state in the same amount* but including a three percent cost of living every year.

Based upon the entirety of the record before us, we find the trial court's conclusion that there is no genuine issue of material fact as to the City's liability to

Plaintiffs to be correct. As the motion for summary judgment concerned only the City, however, we find that the trial court erred in concluding that Plaintiffs' amending petition was moot, insofar as it pertained to other parties. Accordingly, the trial court's order of March 3, 2005 denying Plaintiffs' motion for leave to amend is reversed in part to allow Plaintiffs to assert additional claims against parties other than the City.

## Decree

For the above reasons, the judgment of the trial court granting summary judgment in favor of the City of Alexandria is affirmed; however, Plaintiffs are allowed to amend their petition to assert additional claims against parties other than the City, and the case is remanded for proceedings consistent with this opinion. Costs are assessed equally between Plaintiffs and Defendants.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**WRITTEN REASONS FOR JUDGMENT**

This matter comes before the Court on a Petition for Summary Judgment by the City of Alexandria. Defendant, The Municipal Police Employees' Retirement System of Louisiana did not join in the motion nor participate in the hearing of the matter. The matter was originally argued in March 2004 and taken under advisement by the Court. Subsequently, plaintiffs moved to supplement the record evidence which motion was granted with the matter being finally submitted on May 24, 2004.

The plaintiffs are former members of the Alexandria Police Department having retired from the department. However, plaintiff, Darren Coutee, was appointed Chief of Police for the City of Alexandria subsequent to the filing of the suit. Plaintiffs filed a joint petition for declaratory relief and damages because of an alleged breach of implied and express agreements between the City of Alexandria and certain municipal employees regarding their retirement benefits. In this petition, they allege that when the City of Alexandria merged its city-run retirement system with the state retirement system, certain vested rights were taken from them. Furthermore, plaintiffs allege that certain officials with authority to bind the City of Alexandria made a "no-loss" of benefits guarantee to them.

Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there are no genuine issues as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). La. C.C.P. art. 966 (C)(2) sets forth the burden of proof for the party moving for summary judgment. It states, in pertinent part, that

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

The issue here is whether the City has satisfied this initial burden by pointing out to the Court that there is no genuine issue as to material fact. If the City meets this

hurdle, the burden then shifts to the plaintiffs to show that there is an issue of material fact. If plaintiffs are unable to do this, then the City is entitled to summary judgment.

The crux of the City's argument is tri-fold. First, they argue, and plaintiffs agree, that the retirement systems merged when the Alexandria City Council adopted Ordinance 102-1983 and agreed to be bound to La. R.S. 11:3501 *et seq.* It was this statute that modified plaintiffs' future benefits. The City contends that any loss sustained by plaintiffs is due to this statute and not any action taken by the City. Secondly, they argue that plaintiffs have produced no contract evidencing that a "no loss" guarantee was ever made to them by the City or any other party acting as mandatary for the City. Thirdly, if such a guarantee was in fact made, it was made by a party with no authority to bind the City.

The City first points out an absence of factual support to plaintiffs' claim that when the Alexandria City Council ratified Ordinance No. 102-1983, which subsequently merged the Police Pension and Relief Fund of the City of Alexandria with MPERS, certain vested rights were taken away from plaintiffs. The vested right of which plaintiffs are speaking is the right not to have their retirement benefits reduced once plaintiffs turn fifty years old. The problem with plaintiffs' argument is that "Louisiana jurisprudence provides that a public employee's right to retirement benefits <u>does not become vested</u> until eligibility for retirement is attained and that prior to the achievement of retirement eligibility, the details of a contributory retirement system may be modified by legislation to the prejudice of the employee." *Harrison v. Trustees of Louisiana State Employees' Retirement System,* 671 So.2d 385, 391 (La. App. 1st Cir. 1995). None of the plaintiffs had reached the age of retirement at the time the City adopted Ordinance No. 102-1983 and thus, the City could not have taken away a vested right.

This Court believes that this was a valid modification of public employees' retirement scheme which did not take away from plaintiffs any vested rights. It also believes that the City of Alexandria, when it adopted Ordinance 102-1983, agreed to be bound by the language of Subsection D of La. R.S. 11: 3501, which states, in pertinent part, that

> Any municipality which has a police retirement plan established under R.S. 11:3501 et seq. shall merge its active members into the Municipal Police Employees' Retirement System, and <u>such merger shall be binding on all parties</u>. . . <u>The municipalities</u> which provide retirement with sixteen, twenty, or twenty-five years of service credit at any age <u>shall guarantee and pay its regular retired benefits to any employee who takes a deferred retirement</u> with sixteen, twenty, or twenty-five years of service credit prior to reaching the age of fifty or fifty-five <u>until the retiree reaches the age of fifty or</u>

10

fifty-five and is eligible to receive a benefit from the
Municipal Police Employees' Retirement System.

The City has met the initial burden of showing an absence of factual support for plaintiffs' claim that vested rights were taken from them. The burden now shifts to plaintiffs to show that there is an issue of material fact that justifies this case continuing to trial. The Court believes after examining all of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits that plaintiffs are unable to meet this burden. As such, the City of Alexandria is entitled to summary judgment in regards to plaintiffs' claim that vested rights were taken away from them.

After establishing that the La. R.S. 11:3501 only requires the City to pay retirement benefits until plaintiffs reach the age of 50, the City has the burden of pointing out a lack of factual support for plaintiffs' breach of contract claim. The City must show that it could not have breached a contract because no contract or agreement was ever entered into by or on behalf of the City. Section 2-12 (16) of the Alexandria City Charter requires an ordinance of the City Council in order to authorize any contract on behalf of the City. Plaintiffs have produced no evidence whatsoever that the City Council ever adopted such an ordinance that would bind the City to such a "no-loss" guarantee. However, plaintiffs respond to this fact by arguing that although the City never formally entered into a "no-loss" agreement, they nonetheless became [sic] still became bound to make up the difference in retirement benefits after certain persons who had authority to bind the City did make a "no-loss" guarantee to plaintiffs. In effect, plaintiffs propose that they justifiably relied on these "no-loss" guarantees and thus should enjoy the benefits of equitable estoppel or detrimental reliance.

In support of this claim, plaintiffs point to *Elliot[t] v. Catahoula Parish Police Jury,* 816 So.2d 996 (La. App. 3 Cir. 2002). The Court in *Elliot[t]* held that "a municipality or other governmental agency may be estopped 'where the act or contract relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized.['"] *Elliot[t]* also cites the Louisiana Supreme Court case of *Wilkinson v. Wilkinson,* 323 So.2d 120, 126 (La. 1975) which identified the elements necessary to sustain a claim based on equitable estoppel. It states, in pertinent part

> Equitable estoppel, or 'estoppel in pais' can be defined
> as the effect of the voluntary conduct of a party whereby
> he is barred from asserting rights against another party
> justifiably relying on such conduct and who has changed
> his position to his detriment as a result of such reliance.
> Thus, there are three elements of estoppel: (1) a
> representation by conduct or word; (2) justifiable
> reliance; and (3) a change in position to one's detriment
> because of the reliance.

11

Plaintiffs contend that like the plaintiffs in *Elliot[t]*, they too should be able to enjoy the benefits of equitable estoppel. The Court does not agree.

The Court believes the case at hand is distinguishable from the *Elliot[t]* case. In Elliot[t], the Catahoula Parish Police Jury represented that they would provide health insurance to the Elliot[t]s. The Police Jury made the promise; it had the capacity to bind itself. The Elliot[t]s were not arguing that someone other than the members of the Police Jury promised them health insurance. The only thing the Police Jury failed to do was formally adopt this agreement. Had they done so, once it stopped providing health insurance coverage, the Elliot[t]s would not have relied on equitable estoppel in their breach of contract claim.

In the case at hand, plaintiffs have not shown that anyone who had authority to bind the City of Alexandria made a "no-loss" guarantee. The City has already shown no formal ordinance was adopted. Furthermore, no one with mandatary authority to act for the City made any representation to plaintiffs by conduct or word. Plaintiffs argue that certain members of the Board of Trustees had authority to represent and act for the City. If this were in fact true, then plaintiffs would have shown that there is a material issue of fact making summary judgment in favor of the City inappropriate. However, the Court believes that this assertion by plaintiffs is erroneous as a matter of law.

In *Buras v. Board of Trustees of Police Pension Fund of City of New Orleans,* 367 So.2d 849, 852 (La. 1979), the Louisiana Supreme Court held that the board of trustees of a police pension and relief fund is a state agency because it is a state board which "formulates or issues decisions pursuant to the statutes of Louisiana and, as such, is an 'agency' within the contemplation of the Administrative Procedure Act." La. C.C. art. 3021 states that "[o]ne who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary." The City of Alexandria did not manifest in any way to plaintiffs that the Board of Trustees was authorized to bind the City into any contract or "no-loss" guarantee. Therefore, as the Board of Trustees is an agency of the State of Louisiana, even if its members made a "no-loss" guarantee as plaintiffs contend, this guarantee cannot bind the City of Alexandria.

As with the claim that vested rights were taken from plaintiffs, the City has shown an absence of factual support for plaintiffs' breach of contract claim. They have shown that no ordinance containing a no-loss of benefits guarantee was ever adopted by the City of Alexandria. Furthermore, the City has shown that no one with mandatary authority to bind the City of Alexandria ever made a no-loss of benefits guarantee to plaintiffs. Even if the Court takes as true plaintiffs' claim that members of the Board of Trustees made a no-loss of benefits guarantee, this guarantee cannot bind the City of Alexandria. After showing that there is an absence of factual support for claims essential to plaintiffs' case, the burden of proof shifted to plaintiffs to show that there is a material issue of fact appropriate for a trial on the merits. However, nothing else in plaintiffs' pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits show that there is such an issue of material fact.  It is therefore the ruling of this Court that the summary judgment requested by defendant, City of Alexandria, should be granted.  Judgment should be presented accordingly.

THUS RENDERED AND SIGNED this 24ᵗʰ day of September 2004 in Alexandria, Rapides Parish, Louisiana.

___s/ Harry F. Randow___

HARRY F. RANDOW JUDGE

**WRITTEN REASONS FOR JUDGMENT**

Plaintiffs filed a motion for a new trial on October 14, 2004.  The matter was argued to this Court on November 29, 2004 and subsequently taken under advisement.

Plaintiffs' essential argument in their motion for a new trial is that the Court improperly rendered summary judgment in favor of defendant.  Plaintiffs argue that defendants have not met the initial burden required by La.C.C.P. art. 966, which provides, in pertinent part

> (C)(2) . . .[I]f the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim . . . but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim . . . Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

If plaintiffs were in fact correct and the Court improperly rendered summary judgment, then pursuant to La.C.C.P. art. 1973, the Court would be forced by the mandatory language of the article to grant a new trial.

One issue plaintiffs raise in their motion for a new trial [is] that members of the Alexandria Board of Trustees (hereinafter "the Board") of the Municipal Police Employee' Retirement System (hereinafter "MPERS") can bind the City of

13

Alexandria on all matters of retirement. Based on this power, plaintiffs argue that the Board had the power to bind the City even without the Alexandria City Council adopting a formal ordinance that contained a no loss guarantee.

Plaintiffs cited *Board of Trustees of Firemen's Pension and Relief Fund of City of New Orleans v. City of New Orleans,* 207 So.2d 166 (La. App. 4 Cir. 1968) in support of their proposition. However, the Court believes the case stands for the proposition that the Board is composed of city officials who act in dual capacities. They have duties to carry out the objectives of the Board, which is a state agency, as well as to carry out duties that they perform in connection with their role with the City. If members of the Board are not properly performing their legislatively defined duties, the case specifically points out that the "Board of Trustees would have the power to mandamus another officer of the Board acting in a different capacity." *Id[.]* at 167. As such, if the Board made a no loss guarantee to plaintiffs, it was acting outside of its legislatively authority. La.R.S. 11:3501, et seq. simply does not give the Board the power to bind the City of Alexandria in this way. On the other hand, if members of the Board made the no loss guarantee in their "city official" capacity, the City could only become bound if it subsequently adopted an ordinance promising just that. Sec. 2-12 of the Alexandria City Charter states, in pertinent part:

Sec. 2-12. Action requiring an ordinance.

In addition to other acts required by law or by specific provision of this charter to be done by ordinance, those acts of the city council shall be by ordinance which:

(4)     Appropriate funds and/or adopt the budget for the city.

(16)   Authorize any contract on behalf of the city.

The Alexandria City Council never adopted an ordinance and therefore, the City cannot become bound.

Plaintiffs pointed to Sec. 7-09 of the Alexandria City charter, which states, in pertinent part:

Sec. 7-09.   Policeman's pension fund.

The City of Alexandria policeman's pension fund is not affected in any way by the charter and shall remain in full force and effect and shall be carried out and regulated in accordance with applicable state law.

14

The Court does not find that this in any way changes the case. Sec. 7-09 simply states the proposition that applicable state law, namely La.R.S., shall govern the Alexandria policeman's pension fund. 11:3501, et seq. When Alexandria agreed to merge its retirement system with MPERS, the Board would be responsible for all matters of retirement up to the statutory limits. Therefore, even if the Board had made this no loss guarantee, it clearly would have exceeded its statutory authority.

Defendants showed that no ordinance containing a no loss of benefits guarantee was ever adopted by the Alexandria City Council. As stated before, as this pertains to a contract, the Alexandria City Charter requires that an ordinance be passed. Because no ordinance was passed, the Court believes that defendants met the initial burden as required by La.C.C.P. art. 966(C)(2). They point out that there is an absence of factual support for plaintiffs' breach of contract claim, and plaintiffs are unable to produce factual support that they would be able to satisfy their evidentiary burden at trial. Plaintiffs raise the issue of spoliation, namely that records of City Council meetings were destroyed. They also raise the issue that there was a payment of funds, by order of the Board, to a pensioner when no order existed. In response to both of these issues raised, the Court still finds that even if both of these contentions are true, it does not change the fact that as a matter of law, the City of Alexandria is not bound, absent the adoption of an ordinance, to pay anything promised by the Board, when the promise exceeds their statutory authority. The Court believes it was correct in its original granting of defendants' motion for summary judgment. Therefore, the Court is of the opinion that there exist no peremptory or discretionary grounds for a new trial.

THUS RENDERED AND SIGNED this 1ˢᵗ day of February 2005 in Alexandria, Rapides Parish, Louisiana.

s/Harry F. Randow
HARRY F. RANDOW, JUDGE